**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT COURT OF LOUISIANA**

| | | |
|---|---|---|
| **SILVER DREAM, L.L.C., a Louisiana** | * | **CIVIL ACTION:  2010-3660** |
| **Limited Liability Company** | * | |
| *Plaintiff* | * | **JUDGE LEMMON** |
| **Versus** | * | |
| | * | **SECTION "S"** |
| **CHONG YUN, doing business as** | * | |
| **GOLDEN WAGON** | * | **MAGISTRATE WILKINSON** |

*************************************************************************

**OPPOSITION TO MOTION TO ENFORCE SETTLEMENT**

**MAY IT PLEASE THE COURT**:

In response to Plaintiff, Silver Dream's Motion to Enforce the Settlement Agreement, Defendant, Chong Yun, d/b/a "Golden Wagon," respectfully offers the following:

**I.    INTRODUCTION**

Chong Yun has complied with the terms of the settlement agreement.  She has satisfied all of Silver Dream's demands, including: (1) acceding to the entry of a permanent injunction; (2) paying Silver Dream's exorbitant, wind-fall settlement demand; and (3) executing an affidavit in which she provided what information she had about certain allegedly infringing jewelry pieces.  Despite this, Silver Dream will not let this litigation end but instead, insists on

continuing to harass and abuse Ms. Yun.  Silver Dream's conduct in this regard is not isolated but is part of a broader pattern of vexatious litigation in which Silver Dream is presently engaging throughout the United States Federal Eastern District of Louisiana.[1]

Specifically, Silver Dream has recently embarked on a crusade of litigation against local jewelry sellers, the purpose of which appears to be to drive these small operators into bankruptcy and/or otherwise frustrate their business operations, with the apparent end-game of leaving Silver Dream as the unchallenged king (or perhaps tyrant) of the local costume jewelry market.  Quite plainly, Silver Dream is using federal litigation to bully and intimidate local "mom and pop" operators, including though not limited to Ms. Yun.  As part of its strategy, Silver Dream has repeatedly strong-armed settlements out of weak defendants and then refused to accept the settlement or "terminated the settlement" based on specious defects with the affidavits that Silver Dream insists that defendants sign.  Literally speaking, the allegedly defective affidavit issue presently before this Court is also presently before two other Eastern District Courts, namely, in *Silver Dream LLC v. 3MC, Inc. et al*, Civil Action No. 10-3658 (suit filed October 16, 2010)(Feldman, J.) and *Silver Dream LLC v. Asturias et al.,* Civil Action No. 10-2580 (suit filed August 6, 2010)(Vance, J.).

As will be shown below, Ms. Yun is fully compliant with the terms of the settlement.  The reason this matter remains before the Court is that Silver Dream simply refuses to end litigation.  It refuses in this case; it refuses in the 3MC case and it refuses in the Asturias case.  Its Motion to Enforce is vexatious and without merit and should be denied.

---

[1] Since August 2010, Silver Dream has filed a host of nearly identical complaints against various parties in the Eastern District of Louisiana.  *See Silver Dream LLC v. 3MC, Inc. et al, Civil Action No. 10-3658 (suit filed October 16, 2010)(Feldman, J.) and Silver Dream LLC v. Asturias et al., Civil Action No. 10-2580 (suit filed August 6, 2010)(Vance, J.)*; *Silver Dream LLC v. Yousuf International, Inc*., Civil Action No. 10-4247 (suit filed November 4, 2010)(Zainey, J.); *Silver Dream LLC v. Market Trends, Inc*. Civil Action No. 10-4317 (suit filed November 12, 2010)(Africk; J.); *Silver Dream LLC v. Burke*, Civil Action No. 11-167 (suit filed January 25, 2011)(McNamara, J.)

## II.  FACTS

Ms. Yun suggests that in order to fully and fairly address the merit of Silver Dream's Motion, the Court should be familiar with the larger context out of which the settlement and affidavit arose.

### 1).  The Background Story

Chong Yun is a single mother of a young child who operates a small costume jewelry stall in the French Market.  Her business consists of her buying inexpensive jewelry from wholesalers and reselling the same to the public out of her stall.  Ms. Yun does not manufacture jewelry nor is she a wholesaler.  Sometime in 2010, Ms. Yun purchased 50 pendants (the "Pendants") that incorporated the certain fleur-de-lis design at issue in this litigation (the "Design") at a cost of $10.50 per pendant; she in turn sold 25 of the same for $29.00.  Her net profit on the sale of these pieces was $200.00.  *See* Rec. Doc. No. 11-5.

Silver Dream asserts it owns a valid copyright to the fleur-de-lis design and alleges Ms. Yun infringed on the same by selling the 25 pieces.  However, the validity of Silver Dream's copyright is an open question.  Significantly, the Design incorporates elements that are ubiquitous in New Orleans:  a fleur-de-lis, an image of the Superdome, a football and the words, "Who Dat," and "Believe Dat."  *See* a picture of the Design/Pendant, at Rec. Doc. No. 1, p. 3.  Even a brief visitor to New Orleans could attest to the fact that the city is awash in shirts, signs, songs, posters, bumper stickers, paintings, jewelry, etc., that incorporate those elements alone and in a variety of combinations.  Thus, it is far from certain the Design is sufficiently unique to enjoy copyright protection were the copyright to be challenged.  More importantly, Ms. Yun, despite Silver Dream's allegations to the contrary, did not know the Design was copyrighted.

In its Petition, Silver Dream alleges its owner, Joseph Tumulty, confronted Ms. Yun at a tradeshow and demanded she stop selling the Pendants alleging that Silver Dream owned a copyright to the Design. *See* Rec. Doc. No. 1, p. 4, ¶¶15-16. Further, Silver Dream alleges Ms. Yun confirmed the Design was copied from Silver Dream and surrendered five Pendants. *Id.*

Silver Dream's story misrepresents what actually occurred and conveniently omits certain significant details. During the "Helen Brett" tradeshow held in New Orleans in August 2010, Mr. Tumulty unexpectedly confronted Ms. Yun (at her stand while she was attending to customers) and bellicosely and aggressively declared she was selling pieces to which he allegedly owned a copyright. Being caught off guard by Mr. Tumulty's unexpected, loud verbal-assault, Ms. Yun, a diminutive woman, just nodded in agreement to whatever Mr. Tumulty was barking so as to end the confrontation as quickly as possible. Later, after she composed herself, Ms. Yun approached Mr. Tumulty and expressed her opinion that his behavior at her stand was unprofessional and discourteous but moreover—told him she did not know of his allegedly copyright and asked that he provide her with documentation confirming the same.

Mr. Tumulty did not do so then or later. Instead, and without having first issued any form of cease and desist letter and without having done anything to satisfy Ms. Yun's reasonable request that Silver Dream confirm its copyright, on October 17, 2010, Silver Dream brought the present action along with a Motion for Temporary Restraining Order. *See* Rec. Doc. Nos. 1 and 4. All of the same was forwarded to Ms. Yun under Mr. Latham's cover of October 18, 2010, in which Silver Dream listed a host of demands, not the least of which was that *Ms. Yun pay Silver Dream $20,000.00* in exchange for dropping the suit. *See* correspondence from Greg Latham, attorney for Silver Dream, attached hereto as Ex. 1.

2). <u>The Settlement</u>

Ms. Yun is not Kay Jewelers or Mignon Faget or the like. On the contrary, she is, relatively speaking, an unsophisticated sole proprietor (with no employees) who earns a very modest living operating a costume jewelry retail booth. Thus, although Ms. Yun believes Silver Dream's suit is defensible on several bases, not the least of which being the questionable validity of the copyright, she does not have the financial wherewithal to sustain a defense. The simple reality is Ms. Yun realized she would very easily and quickly incur double, triple or more in attorneys fees than what she could settle for. As such, even if she defended the suit and won, she would, practically speaking, lose. As such, despite that Silver Dream's suit was precipitous, heavy-handed and of dubious legal validity, Ms. Yun concluded she really had no meaningful choice but to settle as quickly as possible. (Of course, the asymmetry of the parties' respective ability to litigate the case was certainly not lost on Silver Dream, who as a contingency fee plaintiff, and who was asserting entitlement to recover legal fees, had the luxury of effectively being able to "fight for free.")

From the beginning of the settlement negotiations, it became clear that Silver Dream had other targets in mind. Specifically, on November 2, 2010, Mr. Latham presented Silver Dream's proposed settlement terms which included Ms. Yun signing an affidavit providing detailed information about alleged infringing activity of *Sterling Silvia* (the defendant in *Silver Dream LLC v. Asturias et al.,* Civil Action No. 10-2580). *See* email correspondence from Greg Latham dated November 2, 2010, attached hereto as Exhibit 2. Sterling Silvia also wanted Ms. Yun to provide information regarding "any other third party" selling the Design. *Id.* Ms. Yun agreed to provide "what information she ha[d]" and to pay a reasonable settlement amount but would not agree to manufacture evidence or to arbitrarily "name-names" when she could not in good faith

recall from whom she purchased the pieces. *See* email from undersigned to Greg Latham dated December 5, 2010, attached hereto as Exhibit 3.

In response, Silver Dream essentially expressed if Ms. Yun would not name-names then Silver Dream would not accept her settlement offer. The message was loud and clear: "If you tell us what we want to hear, we'll let you out of this; if you don't, then we're going to punish you, financially." *See* email correspondence from Greg Latham dated December 6, 2010, attached hereto as Exhibit 4 ("Silver Dream cannot accept a $----[actual number omitted] settlement, *especially given that Ms. Yun claims not to know who designed, manufactured or sold her the infringing items.*")(emphasis added.) The undersigned again explained to Mr. Latham that Ms. Yun was not unwilling, she was unable—as she did not recall from whom she purchased the Pendants. *See* email from undersigned to Greg Latham dated December 6, 2010, attached hereto as Exhibit 5.

Ultimately, the parties reached a settlement agreement, the terms of which were outlined in an email exchange between undersigned and Mr. Latham on December 8, 2010. With respect to the affidavit, Ms. Yun agreed to provide "what information she has." At no point did she agree to attest to all things in the world she did not have knowledge of. Mr. Latham responded, in pertinent part: "[W]e have a deal." *See* email correspondence to and from undersigned counsel and Mr. Latham dated December 6, 2010, attached hereto as Exhibit 6.

Ultimately, on January 21, 2011, Ms. Yun delivered the settlement documents including an affidavit that attested to the information she knew as well as the initial payment of the settlement amount to Silver Dream.[2] Subsequently, Mr. Latham complained that the affidavit

---

[2] Mr. Latham's suggestion that Ms. Yun or the undersigned promised to prepare a settlement document and reneged and unduly delayed the settlement are incorrect. Undersigned prepared and forwarded a settlement and release to Mr. Latham on January 11, 2011. Mr. Latham determined he wanted something more detailed and indicated he

Ms. Yun signed contained a question mark in the box labeled "Quantity Mfg'd." He demanded that she resign the same to say "I don't know." *See* email correspondence to and from undersigned counsel and Mr. Latham dated January 22, 2011, attached hereto as Exhibit 9. Of course, there is no meaningful difference between the former and the later. This is just more of Silver Dream's heavy-handed bullying. Further, Mr. Latham insisted Ms. Yun affirmatively state what she doesn't know. But of course, the settlement agreement Mr. Latham insisted on re-drafting states Ms. Yun will provide an affidavit attesting to information "*to the extent of her knowledge*." She did. There is nothing more for her to do. To the extent that Mr. Latham cites other language he believes supports an alternative interpretation, Ms. Yun suggests any such conflict only supports an argument that the settlement document is ambiguous in this respect; as Mr. Latham drafted the settlement document, the ambiguity is resolved in the favor of the non-drafter, i.e., Ms. Yun.

### III.   ATTORNEYS FEES

As noted above, Silver Dream's Motion is not so much an issue with a defective affidavit as it is part of Silver Dream's pattern of refusing to end litigation that has been resolved. For example, in both *Silver Dream LLC v. 3MC, Inc. et al*, Civil Action No. 10-3658 (suit filed October 16, 2010)(Feldman, J.) and *Silver Dream LLC v. Asturias et al.,* Civil Action No. 10-2580 (suit filed August 6, 2010)(Vance, J.), Silver Dream filed complaints that were nearly

---

would draft something more to his suiting. *See* correspondence to and from undersigned and Mr. Latham, dated January 11, 12 and 18, 2011, attached hereto as Exhibit 7 *in globo*.

Likewise, the argument that Ms Yun in bad faith delayed confection of the settlement is specious. The terms of the settlement were agreed to on December 14, 2010. The following week was Christmas; undersigned counsel traveled to Connecticut to visit family *and ultimately was delayed for five days due to the blizzard in New York City*. This resulted in unforeseen delay that was beyond undersigned counsel's control. Further, Ms. Yun required undersigned to refund the unused portion of her retainer so that she could make the first settlement payment; undersigned could not do that until a bill was generated—all of which was delayed by the blizzard. *All of this was communicated to Mr. Latham. See* correspondence to and from undersigned and Mr. Latham, dated January 3, 2011, attached hereto as Exhibit 8. Thus, his assertions are not well-founded, and he knows it.

identical to its Complaint in this case.  *Compare* Rec. Doc. No. 1 of this case with Rec. Doc. No. 1 of both Civil Action No. 10-3658 and Civil Action No. 10-2580.

Upon information and belief, the defendants in both *3MC* and *Asturias* (d/b/a "Sterling Silvia") were in largely the same catch-22 as Ms. Yun in this case regarding the cost of defending the suits versus attempting to quickly settle.  Ultimately, 3MC and Asturias agreed to settle with Silver Dream.  As with this case, Silver Dream required 3MC and Asturias to sign affidavits similar to that demanded in this case.  Both provided responsive affidavits.  Significantly, 3MC even apparently recalled or was otherwise able to determine from whom it purchased the Pendants—and thus was able to include this information in the affidavit demanded by Silver Dream.

But of course, Silver Dream was not satisfied—and effectively called both 3MC and Asturias liars—claiming the information they in their affidavits was provided was false.  *See* letter from Mr. Latham to Todd Owers (attorney for Asturias), dated October 29, 2010, attached hereto as Exhibit 10 (the document is also Rec. Doc. No. 26-2 in Civil Action No. 10-2580.  *See also* email from Mr. Latham to Marie Breaux (attorney for 3MC, d/b/a "Silver Salon"), dated February 3, 2011, attached hereto as Exhibit 11.  Silver Dream used this pretext to terminate the settlement agreements and promptly filed amended complaints to reinvigorate the litigation.[3]  *See* Rec. Doc. No. 11, ¶¶8, 20-23 in Civil Action No. 10-3658.

At some point the question must arise: Why is Silver Dream having a problem with so many settlements with so many defendants; is it everyone else?; is everyone else providing false

---

[3] Notably, in the 3MC case, the defendant identified (in its affidavit) Malibu International Jewelry Inc. as the supplier of the Pendants.  Despite that Silver Dream alleged this information was false and terminated the settlement based on that allegation, Silver Dream filed an amended complaint in the case to name Malibu International Jewelry Inc. as a defendant; in fact, on February 28, 2011, Silver Dream filed a motion to default Malibu.  *See* Rec. Doc. No. 19 in Civil Action No. 10-3658.  Thus, one has to wonder:  If Silver Dream believed that 3MC provided false information about Malibu in its affidavit, then why did Silver Dream promptly add Malibu as a defendant and move to default it?

affidavits or defective affidavits?; or does the problem lie with the common-denominator, in this case, Silver Dream.

Ms. Yun has had her arm twisted into accepting a settlement agreement whereby she is obligated to pay Silver Dream a wind-fall settlement payment (as even if Ms. Yun was liable for copyright infringement, there can be no meaningful argument that her sale of 25 measly pieces at a profit of $200 caused Silver Dream to suffer an demonstrable damages.) She has complied with the terms of the settlement. There is nothing more for her to do. Silver Dream is not entitled to attorneys fees for brining this Motion as it is specious and brought for a false and bad-faith purpose. On the contrary, as the attorneys fees clause operates against both parties, Ms Yun avers that it is she who is entitled to have Silver Dream pay her the attorneys fees she has incurred in responding to this unnecessary and frivolous Motion and prays that the Court order Silver Dream pay the same.

    Respectfully submitted,

_____
ADAM P. MASSEY# 29330
KING, KREBS & JURGENS, P.L.L.C.
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
amassey@kingkrebs.com
*Attorney for Chong Yun, d/b/a Golden Wagon*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2011 I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

_____
ADAM P. MASSEY